CALDWELL LESLIE & PROCTOR, PC
JOAN MACK, State Bar No. 180451
  *mack@caldwell-leslie.com*
PUNEET V. KAKKAR, State Bar No. 259816
  *kakkar@caldwell-leslie.com*
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for PARAMOUNT PICTURES
CORPORATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRINCESS SAMANTHA KENNEDY, ADAM CLAYTON URICH,<br><br>Plaintiffs,<br><br>v.<br><br>PARAMOUNT PICTURES CORPORATION,<br><br>Defendant. | Case No. 12-CV-0372-WQH WMc<br><br>Honorable William Q. Hayes<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PARAMOUNT PICTURES CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**[Fed R. Civ. P. 12(b)(6)]**<br><br>**[Notice of Motion and Request for Judicial Notice filed concurrently herewith]**<br><br>**Date:   December 17, 2012**<br>**Time:   11:00 a.m.**<br>**Place:  Courtroom 4**<br><br>**[NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT]** |

CALDWELL
LESLIE &
PROCTOR

12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.................................2

        A.      Princess Kennedy's Copyrights .................................................2

        B.      Princess Kennedy Previously Sued Paramount for Infringing Her Copyrights In Connection With *Forrest Gump* .........................3

        C.      Princess Kennedy Now Sues Paramount for Infringing the Very Same Copyrights In Connection With *Titanic*................................4

        D.      Synopsis of Plaintiff's Biographies .........................................5

        E.      Synopsis of *Titanic*................................................................7

III.    LEGAL STANDARD UNDER RULE 12(b)(6) ...................................9

IV.     THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT ...................................................10

        A.      Plaintiff's Biographies and *Titanic* Are Not Substantially Similar as a Matter of Law .....................................................11

                1.      Plot, Setting, Themes, Mood, and Sequence of Events.............12

                2.      Characters ...............................................................13

                3.      Dialogue..................................................................14

        B.      The First Amended Complaint Fails to Allege Copying of Protected Elements.................................................................14

        C.      The First Amended Complaint Fails to State a Claim Under *Metcalf v. Bochco*................................................................17

        D.      The First Amended Complaint Fails to Sufficiently Allege Access ...................................................................................18

        E.      Adam Urich Fails to State a Claim for Copyright Infringement Because He Lacks Standing.................................................19

V.      AMENDMENT WOULD BE FUTILE .........................................19

VI.     CONCLUSION .......................................................................20

CALDWELL
LESLIE &
PROCTOR

-i-                                                                12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 18

*Berkic v. Crichton*,
    761 F.2d 1289 (9th Cir. 1985) ............................................................................... 13

*Cahill v. Liberty Mut. Ins. Co.*,
    80 F.3d 336 (9th Cir. 1996) ..................................................................................... 9

*Campbell v. Walt Disney Co.*,
    718 F. Supp. 2d 1108 (N.D. Cal. 2010) ............................................................... 11

*Cavalier v. Random House*,
    297 F.3d 815 (9th Cir. 2002) ................................................................................. 10

*Christianson v. West Pub. Co.*,
    149 F.2d 202 (9th Cir. 1945) ................................................................................. 11

*Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.*,
    499 U.S. 340 (1991) ............................................................................................... 10

*Flynn v. Surnow*,
    70 U.S.P.Q.2d 1231 (C.D.Cal. 2003) .................................................................... 18

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
    462 F.3d 1072 (9th Cir. 2006) ............................................................................... 15

*Idema v. Dreamworks, Inc.*,
    162 F. Supp. 2d 1129 (C.D. Cal. 2001) ........................................................... 14, 15

CALDWELL
LESLIE &
PROCTOR

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1

**TABLE OF AUTHORITIES**

2

(continued)

Page(s)

3

<u>Cases</u>

4

*Jason v. Fonda,*

5

 698 F.2d 966 (9th Cir. 1982) ........................................................................ 18

6

*Knievel v. ESPN,*

7

 393 F.3d 1068 (9th Cir. 2005) ...................................................................... 10

8

*Lake v. Columbia Broadcasting Sys., Inc.,*

9

 140 F. Supp. 707 (S.D. Cal. 1956) ............................................................... 11

10

*Lopez v. Smith,*

11

 203 F.3d 1122 (9th Cir. 2000) ...................................................................... 10

12

*Metcalf v. Bochco,*

13

 294 F.3d 1069 (9th Cir. 2002) ...................................................................... 17

14

*Mir, M.D. v. Little Co. of Mary Hosp.,*

15

 844 F.2d 646 (9th Cir. 1988) ........................................................................ 10

16

*Moore v. United States,*

17

 193 F.R.D. 647 (N.D. Cal. 2000) ................................................................. 20

18

*Narell v. Freeman,*

19

 872 F.2d 907 (9th Cir. 1989) ........................................................................ 14

20

*Olson v. National Broadcasting Co.,*

21

 855 F.2d 1446 (9th Cir. 1988) ...................................................................... 14

22

*Peter F. Gaito Architecture, LLC v. Simone Develop. Corp.,*

23

 602 F.3d 57 (2d Cir. 2010) ........................................................................... 11

24

*Zella v. E.W. Scripps Co.,*

25

 529 F. Supp. 2d 1124 (C.D. Cal. 2007) ........................................... 11, 12, 17

26

27

28

CALDWELL
LESLIE &
PROCTOR

# TABLE OF AUTHORITIES

(continued)

Page(s)

Statutes

17 U.S.C. § 501 ........................................................................................ 19

12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case arises from the fanciful claim that the motion picture *Titanic* was copied from the unpublished biographical works of Plaintiff Princess Samantha Kennedy ("Princess Kennedy").  Fifteen years after *Titanic* was released, Princess Kennedy and her son Adam Clayton Urich (collectively "Plaintiffs") commenced this action, filing a single cause of action for copyright infringement against Defendant Paramount Pictures Corporation ("Paramount").

In their First Amended Complaint, Plaintiffs allege that in creating *Titanic*, Paramount exploited and infringed three unpublished scripts that Princess Kennedy registered with the U.S. Copyright Office in 1991 and 1993 ("Plaintiff's Biographies").  Plaintiff's Biographies all relate essentially the same story—that of Princess Kennedy's father, a former U.S. Air Force officer who was discharged from the Air Force in the 1950s after he became a whistleblower.  Unable to find work after his discharge, Princess Kennedy's father moved his family from state to state and eventually lost custody of his five children due to allegations of neglect.

Notably, this is not the first lawsuit in which Princess Kennedy claims that her Biographies have been infringed.  In 1995, two years before *Titanic* was released, Princess Kennedy brought suit against Paramount alleging that the motion picture *Forrest Gump* infringed the very same copyrighted works she contends are infringed in this action.  In the *Forrest Gump* action, this Court granted summary judgment for the defendants, which was affirmed by the U.S. Court of Appeals for the Ninth Circuit.  The Court also warned Princess Kennedy that generic ideas, plots, or scenes cannot give rise to a copyright infringement and that further unsuccessful claims could expose her to liability for attorneys fees.

Despite the Court's admonition in the *Forrest Gump* action, Princess Kennedy has now sued Paramount again on the same legally deficient theories.  And

CALDWELL
LESLIE &
PROCTOR

-1-                                          12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  like her claims in the *Forrest Gump* action, Princess Kennedy's First Amended
2  Complaint in this case fails to state a claim for copyright infringement.

3      The most fundamental flaw in Plaintiffs' claim is that *Titanic* is not
4  "substantially similar," as a matter of law, to Plaintiff's Biographies.  Paramount
5  requests that the Court take judicial notice of Plaintiff's Biographies and a copy of
6  *Titanic*, both of which are referred to in the First Amended Complaint and therefore
7  may be considered in connection with this Motion.  It is well-settled that in
8  connection with a motion to dismiss, this Court may analyze works to make the
9  determination as to whether they are "substantially similar."  A comparison of the
10  plot, themes, dialogue, mood, setting, pace, characters, and sequence of events
11  demonstrates that *Titanic* is different in every respect from Plaintiff's Biographies.
12  Accordingly, Plaintiffs cannot state a claim for copyright infringement.

13      In addition, the First Amended Complaint includes, at best, allegations of
14  infringement of generic *scènes á faire*, which copyright law does not protect.
15  Further, Plaintiffs fail to properly allege that the writer of *Titanic* had access to the
16  copyrighted works at issue.

17      The First Amended Complaint also admits that one of the Plaintiffs—Adam
18  Urich—does not own the copyrights at issue or any of the exclusive rights thereto.
19  Accordingly, Plaintiff Urich is not entitled to seek relief under the copyright laws
20  and his claims should be dismissed.

21      Finally, these defects cannot be cured by further amendment.  There is
22  nothing that Plaintiffs can allege that will change the fact that Plaintiff's Biographies
23  and *Titanic* are not substantially similar in any way.  Accordingly, dismissal is
24  appropriate without leave to amend.

25  ## II.  FACTUAL AND PROCEDURAL BACKGROUND

26      ### A.  *Princess Kennedy's Copyrights*

27      Plaintiffs allege that Defendant Paramount has infringed three copyrights
28  belonging to Plaintiff Kennedy in connection with the film *Titanic*:  (1) Copyright

CALDWELL
LESLIE &
PROCTOR

-2-    12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

Registration No. TXu000464805, entitled "My Daddy was a Whistleblower" with a registration date of April 5, 1991; (2) Copyright Registration No. PAu00548413, entitled "Missing Pieces" with a registration date of September 6, 1991; and (3) Copyright Registration No. TXu000583376, entitled "My Daddy was a Whistleblower" with a registration date of May 10, 1993 (collectively, "Plaintiff's Biographies"). (First Amended Complaint ("FAC"), ¶ 6 & Exh. A.) Princess Kennedy alleges in the First Amended Complaint that Plaintiff's Biographies are her "biographies" and based on her life. (FAC, ¶ 11.)

### B. Princess Kennedy Previously Sued Paramount for Infringing Her Copyrights In Connection With Forrest Gump

On September 12, 1995, Princess Kennedy filed suit against Paramount in *Samantha Kennedy v. Paramount Pictures Corporation, et al.*, United States District Court for the Southern District of California, Case No. 3:95-cv-01954-K, alleging that Defendants Paramount, Viacom Inc., and Blockbuster Videos, Inc. ("Blockbuster") were liable for infringing her rights in Plaintiff's Biographies in connection with the motion picture *Forrest Gump* (the "*Forrest Gump* Action"). (RJN, Exhs. 1 (docket of the *Forrest Gump* Action) & 2 at ¶ 6 (Amended Complaint in *Forrest Gump* Action).) Princess Kennedy filed her Amended Complaint in that action on November 17, 1995. (*Id.*)

The crux of Princess Kennedy's claims against Defendants Paramount, Viacom, and Blockbuster was that they had infringed her copyrights by using Plaintiff's Biographies to make the movie *Forrest Gump* and unlawfully distributing that picture. (RJN, Exh. 2 (Amended Complaint in *Forrest Gump* Action).) Princess Kennedy also contended that *Forrest Gump* was substantially similar to Plaintiff's Biographies because, for example, both sets of works referred to public figures and had characters who sat next to each other, who had "sweet voices," or who were "isolated." (RJN, Exh. 3 (Motion for Summary Judgment) at 17-20.)

CALDWELL LESLIE & PROCTOR

-3-                                        12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    The defendants in the *Forrest Gump* Action moved for summary judgment on

2  the grounds that Princess Kennedy could not establish that Paramount had access to

3  Plaintiff's Biographies and that there was no substantial similarity as a matter of law

4  between Plaintiff's Biographies and *Forrest Gump*.  (*Id.*)  Defendants prevailed and

5  obtained summary judgment against Princess Kennedy on February 14, 1997.  (RJN,

6  Exh. 1.)

7    After obtaining summary judgment, defendants also moved for an award of

8  attorneys' fees and costs.  (*Id.*)  The Court found that Princess Kennedy's claims in

9  connection with *Forrest Gump* were not frivolous or brought in bad faith, because

10 "possibly Plaintiff did not understand copyright law."  (RJN, Exh. 7 (Order Denying

11 Defendants' Motion for Attorneys Fees and Costs).)  However, the Court reminded

12 Plaintiff that common words, phrases, and ideas are unprotectable *scènes á faire*.

13 The Court further concluded:

> Should Plaintiff choose to pursue any copyright claims against these or other Defendants in the future, and if Plaintiff does not prevail on such claims, **PLAINTIFF BEARS THE RISK OF HAVING TO PAY COSTS AND ATTORNEYS' FEES TO THE OPPOSING PARTY**. . . . Plaintiff has (1) had the law of copyright explained to her, (2) been advised of the doctrine of <u>scenes a faire</u> and (3) been warned that good faith, standing alone, is not enough to sustain a copyright infringement claim.

19 (*Id.* (emphases in original).)

20   Princess Kennedy unsuccessfully appealed the order granting summary

21 judgment to the U.S. Court of Appeals for the Ninth Circuit.  (*See* RJN, Exh. 1.)

22 The U.S. Supreme Court denied her petition for writ of *certiorari*.  (*See* RJN, Exh.

23 1.)

24   **C.   *Princess Kennedy Now Sues Paramount for Infringing the Very***

25        ***Same Copyrights In* Connection *With* Titanic**

26   Ten years after she exhausted her appeals in the *Forrest Gump* Action,

27 Princess Kennedy sued Paramount again.  Without claiming *which* copyright was at

28 issue in this case, or *how* Paramount had access to their copyrighted works,

CALDWELL
LESLIE &
PROCTOR

-4-                    12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  Plaintiffs filed their original Complaint in this action alleging that Princess Kennedy

2  "own[s] all the rights to this motion picture [*Titanic*]." (Doc. 1, at 11.)

3         Paramount moved to dismiss the Complaint on July 12, 2012, on the grounds

4  that the Complaint did not sufficiently allege a claim for copyright infringement

5  because it failed to allege infringement of protectable elements or even identify the

6  copyright registrations at issue.  (Doc. 14.)  Two weeks later, Plaintiffs requested

7  leave to file a First Amended Complaint.  Plaintiffs' request was granted thereby

8  rendering Paramount's Motion to Dismiss moot.  (Doc. 22.)  Plaintiffs filed their

9  First Amended Complaint on October 26, 2012.  (Doc. 24.)

10         In the First Amended Complaint, Plaintiffs admit that the copyrights at issue

11  are Plaintiff's Biographies—*the same copyrights* Princess Kennedy contended were

12  infringed by Paramount in creating *Forrest Gump*.  (*Compare* FAC, ¶ 6 (copyrights

13  allegedly infringed in this action *with* RJN, Exh. 2 at ¶ 6 (copyrights allegedly

14  infringed in the *Forrest Gump* Action).)  Plaintiffs further allege that Princess

15  Kennedy is the sole owner of the copyrights for Plaintiff's Biographies, and that

16  Paramount acquired copies of her copyrighted work during discovery in the *Forrest

17  Gump* Action.  (FAC, ¶ 13.)  Plaintiffs allege that Paramount "copied" Plaintiff's

18  Biographies to create *Titanic*.  (*Id.*)  Plaintiffs also allege that Paramount is liable for

19  up to $3 billion in damages, impoundment and destruction of all infringing works,

20  and punitive damages.  (FAC, ¶¶ 11, 15 & Prayer, ¶¶ 4, 10, 11.)

21      **D.**    ***Synopsis of Plaintiff's Biographies***

22         The following is a summary of Plaintiff's Biographies, copies of which are

23  submitted as Exhibits 4, 5, and 6 to Paramount's Request for Judicial Notice.  Each

24  of Plaintiff's Biographies relates essentially the same story—the family history of

25  Teresa Urich aka Teresa Kennedy and Princess Samantha Kennedy.  (*See* FAC,

26  Exh. B.)

27         The main characters in Plaintiff's Biographies are her parents Gilbert Glenn

28  ("Gilbert") and Lorine Kennedy ("Lorine").  Gilbert, an intelligent and

1 accomplished officer in the United States Air Force, meets and falls in love with
2 Lorine in the beginning of the story.  Over Lorine's mother's objection, the two get
3 married in June 1952 and later move to Wyoming, where Gilbert continues his
4 military training and distinguishes himself as an exemplary officer.

5 After Gilbert completes his advanced training, he is stationed at an airbase in
6 Newfoundland as a records specialist.  During this tour of duty, Gilbert discovers
7 that his superiors—General Pepperlilly and Colonel Rose—are committing various
8 acts of misconduct, including misappropriating military property, storing illegal
9 toxic wastes, and organizing parties rampant with prostitution.  Gilbert subsequently
10 reports this misconduct (thus becoming the "whistleblower") to Senator Estes
11 Kefauver,[1] who promises to investigate the complaints.

12 U.S. Air Force officials learn of Gilbert's reports and conspire to force Gilbert
13 out of the service, despite his exemplary record.  A base commander arranges for a
14 military doctor to intentionally administer drugs to Gilbert in order to trigger a
15 protracted series of illnesses and symptoms that allowed the U.S. Air Force to
16 discharge Gilbert under the pretense that he is "unsuitable" for service.

17 After his discharge, Gilbert moves his family, then consisting of his wife
18 Lorine and their firstborn child (a "retarded son" named Damon) to Tennessee.
19 While living in Tennessee, the Glenn's had three more children.  Because of the
20 "unsuitable" denotation on his discharge papers and other "secret codes" signifying
21 that Gilbert is a traitor to the United States, Gilbert has significant difficulty finding
22 gainful employment.  Gilbert also becomes the subject of a McCarthy era
23 investigation led by the Federal Bureau of Investigation for possible communist
24 activity.

25

26 _____

27 [1] Estes Kefauver was the United States Senator for Tennessee from 1949 to 1963.
Biographical Directory of the United States Congress,
http://bioguide.congress.gov/scripts/biodisplay.pl?index=K000044.

28

CALDWELL
LESLIE &
PROCTOR
-6-                                                    12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    Gilbert and Lorine relocate to Ohio in hopes of finding a better life.  During

2  their time in Ohio, Lorine gives birth to their fifth child, Therese.  Gilbert continues

3  to experience difficulties in finding meaningful employment, and in 1959, the

4  family returns to Tennessee.  After the move, Gilbert is accused of neglecting and

5  abusing his children by Lorine's mother, Ethel—who had disapproved of the

6  marriage from the start.  After a cursory investigation of the complaints, the children

7  are taken from Gilbert and Lorine and sent to foster homes.

8    Eventually, Gilbert and Lorine are exonerated of the charges of neglect and

9  abuse, but are not reunited with their children.  Throughout the 1960s and 1970s,

10  Gilbert dedicates his life to finding all of his children—even while suffering from an

11  illness that caused paralysis of his legs.  Gilbert is able to locate his three middle

12  children, and continues to call on numerous public officials, such as congressmen,

13  senators, and even officials working with President Nixon for help in finding the

14  other two.  Eventually, Gilbert finds Therese who is a struggling singer that has

15  recovered from a near fatal brain disease.  Gilbert is overwhelmed with joy that he

16  has found Therese and tells her his life story including how the government was

17  responsible for all of the family's troubles.  Gilbert dies, however, before finding his

18  eldest son, Damon.

19    **E.    *Synopsis of* Titanic**

20    Following is a summary of the motion picture *Titanic*, a copy of which is

21  lodged with the Court as Exhibit 8 to Paramount's Request for Judicial Notice.

22  Released in 1997, *Titanic* has been described as *Romeo and Juliet* aboard the

23  Titanic, a British passenger liner that sank in the Atlantic Ocean on April 15, 1912

24  after colliding with an iceberg.

25    *Titanic* begins in modern day, with treasure hunter Brock Lovett exploring the

26  remains of the Titanic, still at the bottom of the ocean.  Lovett is looking for the

27  "Heart of the Ocean" necklace—a 56-carat blue diamond reportedly once owned by

28  King Louis XVI of France.  Lovett's exploration is not entirely unsuccessful—he

CALDWELL
LESLIE &
PROCTOR

-7-                                                    12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1 and his team uncover a locker that gives them one clue:  there is a drawing of a nude
2 woman wearing the necklace.

3     A passenger who was believed to have died when the Titanic sank, sees
4 Lovett's discovery on television, and contacts the explorers to inform them that she
5 is the one depicted in the drawing.  Rose flies out to meet with the explorers and
6 tells them the story of her days aboard the Titanic.

7     *Titanic* then shifts to its central story which takes place aboard the Titanic in
8 1912.  The story centers on two individuals:  Jack Dawson ("Jack"), a young artist
9 and drifter who wins a third-class ticket for voyage on the ship in a poker game; and
10 Rose DeWitt Bukater ("Rose"), a first-class passenger traveling with her wealthy
11 fiancé, Caledon Hockley ("Cal") and her mother, Ruth DeWitt Bukater.  Rose's
12 engagement to Cal has been forced upon her by her mother in an effort to preserve
13 their social status and wealth.

14     Distraught by her forced engagement, Rose attempts to commit suicide by
15 jumping over the ship's railing.  Rose is saved by Jack, who finds her at the railing
16 and convinces her not to jump.  Rose's fiancé, Cal, comes upon the two and Rose
17 tells him that Jack saved her from falling off the ship whilst she was looking over
18 the ship's edge.  As a gesture of gratitude, Cal invites Jack to join them for dinner in
19 the first-class dining room.  Dinner highlights the extreme differences in social
20 status between Jack and Rose.  Later that night, Rose joins Jack at a party in the
21 third-class part of the ship, which she thoroughly enjoys.  The two develop a
22 friendship, and a romance blossoms.  The forbidden romance culminates in Rose
23 asking Jack to sketch her nude wearing the "Heart of the Ocean," and a night of
24 passion in a car that is in the ship's cargo.

25     That same night, the Titanic collides with an iceberg and a frenzy ensues.
26 Preparing to evacuate, Cal discovers the nude drawing of Rose and learns about the
27 romance between his fiancée and Jack.  Cal has his bodyguard slip the Heart of the
28 Ocean into Jack's coat pocket to frame Jack for stealing.  Jack is subsequently

CALDWELL
LESLIE &
PROCTOR

-8-                                    12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   arrested and handcuffed to a pole, and Cal retrieves the necklace.  Rose learns of

2   Jack's arrest, finds an axe, and frees Jack.

3          Meanwhile, passengers are beginning to evacuate the ship.  Cal and Jack

4   convince Rose to leave on a lifeboat and assure her that they will follow.  Rose

5   cannot bear to leave Jack, however, and she jumps back on board the Titanic from

6   her lifeboat to join him.  Cal chases the couple with a pistol, shooting at them in an

7   effort to break them up.  After exhausting his ammunition and realizing that his

8   efforts are futile, Cal jumps ship, remembering after the fact that he had given his

9   coat—which held the "Heart of the Ocean" necklace—to Rose as she was boarding

10  the lifeboat.

11         Jack and Rose are on the deck of the Titanic when the ship breaks in half and

12  proceeds to sink.  Rose and Jack end up in the water with one piece of debris on

13  which Rose floats.  Ultimately, they are discovered by a lifeboat that is searching for

14  survivors; but Jack, who has been in the water, has died of hypothermia.  When

15  Rose boards the survivor ship, she provides the name of "Rose Dawson" in an

16  attempt to escape detection by Cal or her mother.

17         The story of *Titanic* then returns to the present day, with Rose at the stern of

18  Lovett's ship, having just virtually re-lived the experience of being aboard the

19  Titanic.  Rose takes out the "Heart of the Ocean" necklace—which she had with her

20  all along—and drops it into the ocean.  The story concludes with Rose dreaming

21  about reuniting with Jack on the Titanic.

22  **III.   LEGAL STANDARD UNDER RULE 12(b)(6)**

23         On a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must

24  accept as true all factual allegations in the complaint, and construe those facts and

25  all reasonable inferences drawn from those fact in the light most favorable to

26  Plaintiff.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  To

27  survive a motion to dismiss, "a complaint must contain sufficient factual matter,

28  accepted as true to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

CALDWELL
LESLIE &
PROCTOR
                                        -9-                    12-CV-0372-WQH WMc
                    DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
                IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  *Iqbal*,  556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S.

2  544, 570 (2007)).

3        In ruling on a 12(b)(6) motion, a court generally cannot consider material

4  outside of the complaint (e.g., those facts presented in briefs, affidavits, or discovery

5  materials).  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  A court may,

6  however, consider exhibits submitted with the complaint.  *Id.*  Also, a court may

7  consider documents that (a) are not physically attached but whose contents are

8  alleged in the complaint or (b) are documents on which plaintiff's claims depend,

9  even if their contents are not explicitly alleged in the complaint.  *Id.*  Further, it is

10 proper for the court to consider matters subject to judicial notice pursuant to Federal

11 Rule of Evidence 201.  *See Mir, M.D. v. Little Co. of Mary Hosp.,*  844 F.2d 646,

12 649 (9th Cir. 1988).  Finally, courts may dismiss a complaint without leave to

13 amend if the plaintiff is unable to cure the defect by amendment.  *Lopez v. Smith,*

14 203 F.3d 1122, 1129 (9th Cir. 2000).

15 **IV.   THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM**

16 **        FOR COPYRIGHT INFRINGEMENT**

17       To state a claim for copyright infringement, a plaintiff must allege:  "(1)

18 ownership of a valid copyright, and (2) copying of constituent elements of the work

19 that are original."  *Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 361

20 (1991).  The second prong requires the plaintiff to allege and ultimately show that

21 "the infringer had access to plaintiff's copyrighted work and the works at issue are

22 substantially similar in their protected elements."  *Cavalier v. Random House*, 297

23 F.3d 815, 822 (9th Cir. 2002).

24       Here, Paramount concedes that Plaintiffs has alleged ownership of three

25 copyrights.  Plaintiffs' claim for infringement of those copyrights, however, fails for

26 three independent reasons.  First, Plaintiff's Biographies and the motion picture

27 *Titanic* are not substantially similar as a matter of law.  Second, Plaintiffs have

28 failed to allege that protectable elements of Plaintiff's Biographies have been

CALDWELL
LESLIE &
PROCTOR

-10-                    12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  copied, and third, Plaintiffs fail to allege facts to establish that the creator of *Titanic*

2  had access to Plaintiff's Biographies.

3      **A.**    ***Plaintiff's Biographies and Titanic Are Not Substantially Similar as a***

4          ***Matter of Law***

5      It is well-settled that the issue of substantial similarity in a copyright

6  infringement case may be determined by the court, as a matter of law, at the pleading

7  stage by examining and comparing the relevant works.  *Christianson v. West Pub.*

8  *Co.*, 149 F.2d 202 (9th Cir. 1945); *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d

9  1108, 1112 (N.D. Cal. 2010) (granting motion to dismiss after finding that plaintiff's

10  work and the allegedly infringing work, both judicially noticed, were not substantially

11  similar as a matter of law); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124 (C.D.

12  Cal. 2007) (granting motion to dismiss after a comparison of plaintiff's show script

13  with allegedly infringing shows on DVD, both referenced in the complaint and

14  judicially noticed by the court, showed a lack of substantial similarity as a matter of

15  law); *Lake v. Columbia Broadcasting Sys., Inc.*, 140 F. Supp. 707, 708 (S.D. Cal.

16  1956) ("[T]he Court may assume validity of the copyright and, comparing the literary

17  products incorporated into the complaint, determine as a matter of law whether or not

18  the copyright has been infringed."); *see also Peter F. Gaito Architecture, LLC v.*

19  *Simone Develop. Corp.*, 602 F.3d 57, 64-65 (2d Cir. 2010) (holding that a court may

20  determine substantial similarity as a matter of law on a motion to dismiss).

21      To perform this analysis, courts may take judicial notice of the asserted

22  copyrighted works and the allegedly infringing works that are referred to in the

23  complaint and whose authenticity no party questions.  *See, e.g.*, *Campbell*, 718 F.

24  Supp. 2d at 1112 n.3; *Zella*, 529 F. Supp. 2d at 1128-29.  Once the Court has taken

25  judicial notice of the relevant works, "the works themselves supersede and control

26  contrary descriptions of them, including any contrary allegations, conclusions, or

27  descriptions of the works contained in the pleadings."  *Peter F. Gaito Architecture,*

28

CALDWELL
LESLIE &
PROCTOR

-11-    12-CV-0372-WQH WMc

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  *LLC*, 602 F.3d at 64 (citing *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir.

2  1986) and 3-12 Nimmer on Copyright § 12.10) (internal quotes omitted).

3      Paramount has provided the Court with copies of Plaintiff's Biographies and

4  with a copy of the motion picture *Titanic*, which are appropriate for judicial notice

5  and may be considered in connection with this Motion.  As explained below, a

6  comparison of these works demonstrates that Plaintiffs' claim for copyright

7  infringement fails because there is no substantial similarity as a matter of law.

8      To assess substantial similarity as a matter of law, the Court must apply the

9  objective "extrinsic test," which focuses on the "'articulable similarities between the

10  plot, themes, dialogue, mood, setting, pace, characters, and sequence of events.'"

11  *Zella*, 529 F. Supp. 2d at 1133 (quoting *Funky Films, Inc. v. Time Warner Ent't Co.*,

12  462 F.3d 1072, 1077 (9th Cir. 2006)).  In performing this analysis, the court "'must

13  take care to inquire only whether the protectable elements, standing alone, are

14  substantially similar' and to 'filter out and disregard the non-protectable elements in

15  making [the] substantial similarity determination.'"  *Id.*

16      In this case, even assuming that Plaintiffs had identified infringement of

17  protectable elements (which they have not), a comparison of Plaintiff's Biographies

18  to *Titanic* reveals that the works are not "substantially similar."  Indeed, the works

19  are not at all similar and, for that reason, Plaintiffs cannot state a claim for copyright

20  infringement.  *See, e.g.*, *Zella*, 529 F. Supp. 2d 1124 (finding, at the motion to

21  dismiss stage, that the *Rachel Ray* talk-style show was not substantially similar to

22  plaintiff's scripts of a 30-minute interview/cooking show).

23      **1.      Plot, Setting, Themes, Mood, and Sequence of Events**

24      On every level, *Titanic* and Plaintiff's Biographies have fundamentally

25  different plots, themes, settings, and sequences of events.  The plots and sequence of

26  events turn on entirely different storylines and events.  Plaintiff's Biographies

27  recount the story of an individual, Gilbert Glenn, who is forced out of the United

28  States Air Force during the 1950s for being a whistleblower.  This fateful event

CALDWELL
LESLIE &
PROCTOR

-12-

12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  ruins his life and that of his family.  In contrast, *Titanic* is a story of young love that
2  takes place aboard the Titanic in 1912.  The shipboard romance centers on a young
3  socialite who is engaged to a wealthy boor and a young working class man traveling
4  in third-class.  The motion picture also depicts the true story of the tragic sinking of
5  the Titanic.

6       The scenes are also markedly different.  Plaintiff's Biographies take place in a
7  multitude of settings and locations across North America, from Tennessee to
8  Wisconsin to Newfoundland to Ohio and back to Tennessee.  *Titanic*, takes place
9  primarily aboard the English passenger ship as it sails at sea.

10      The works also take place in different eras.  Plaintiff's Biographies set forth
11  her father's story over a thirty-year period against a backdrop of historical events of
12  the latter-half of the twentieth century—including the Korean war, the McCarthy
13  Era, and the presidency of Richard Nixon.  *Titanic*, takes place in the span of a few
14  days in 1912 with a short visit to the present day.

15      The moods of the two works are also in stark contrast.  Plaintiff's Biographies
16  relate a mood of tragedy and despair.  And although *Titanic* is largely a romantic
17  tragedy, its mood of young love and adventure are integral to the film and its critical
18  acclaim.

19      Despite the lack of similarities, Princess Kennedy has attempted to
20  characterize the plot and theme of *Titanic* as substantially similar to Plaintiff's
21  Biographies because, among other things, both stories involve a romance that was
22  disapproved by the mother-in-law.  This is not a "plot" and, at most, Plaintiffs have
23  alleged a generic similarity—one which is not protected by copyright law.  *See*
24  *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) (holding that the basic plot
25  idea is not protected by copyright law).

26              **2.      Characters**
27      The primary characters of *Titanic* are not similar, let alone "substantially
28  similar," to the primary characters in Plaintiff's Biographies.  The primary

CALDWELL
LESLIE &
PROCTOR

-13-                          12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

characters of *Titanic* are Jack and Rose.  Jack is a free-roaming drifter of limited means and Rose is a young socialite from a wealthy background who yearns to escape the confines of her social status.  The primary characters of Plaintiff's Biographies are her parents, Gilbert and Lorine.  Gilbert is an accomplished and ethical officer of the U.S. Air Force.  Lorine is his devoted wife and mother of his children.  Thus, the names and character types are different.  Further, characters similar to Gilbert and Lorine do not appear in any form—in *Titanic*.  Accordingly, the works are not "substantially similar" in term of characters.

### 3.    Dialogue

To support a claim of substantial similarity based on dialogue, the plaintiff must demonstrate—and therefore, at the minimum, allege—"extended similarity of dialogue." *See Olson v. National Broadcasting Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988).  Ordinary words and phrases are not entitled to copyright protection, nor are "phrases or expressions conveying an idea typically expressed in a limited number of stereotyped fashions." *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989).  Plaintiffs have not alleged that any dialogue (that is, non-ordinary words and phrases) from *Titanic* is substantially similar to the dialogue in any of Plaintiff's Biographies.  Nor can Plaintiffs amend to cure this defect because a comparison of Plaintiff's Biographies and *Titanic* reveals that the dialogue is remarkably different.

In sum, an analysis of the relevant factors of the "extrinsic" test reveal that Plaintiff's Biographies and *Titanic* are not substantially similar in any way and, accordingly, Plaintiffs fail to state a claim for copyright infringement.

### B.    *The First Amended Complaint Fails to Allege Copying of Protected Elements*

The First Amended Complaint also fails on the independent ground that it does not allege infringement of protectable elements of Plaintiff's Biographies.  For purposes of a copyright infringement claim, only "protected *expression*" is relevant for purposes of analyzing substantial similarity.  *Idema v. Dreamworks, Inc.*, 162 F.

CALDWELL
LESLIE &
PROCTOR

-14-

12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  Supp. 2d 1129, 1176 (C.D. Cal. 2001) (emphasis in original).  "[U]nprotectable

2  elements" include in relevant part "'ideas' as distinguished from 'expression' of

3  those ideas" and "elements borrowed from another author or from the 'public

4  domain.'"  *Id.* at 1176-77.  *See also Funky Films, Inc. v. Time Warner Entm't Co.,*

5  *L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (holding that ideas and "scenes à faire"

6  elements that flow naturally from generic plot lines, are not protectable).

7        In the First Amended Complaint, Princess Kennedy alleges that *Titanic* is

8  similar to her "unpublished biographies" because of the commonalities including

9  "[characters] Jack, Rose, Lucy, Marvin, MaryJane . . . the card game and winning

10  ticket, the artist drawing the girl, girl on the pier, the inspection, playing the card

11  game with men with different accents . . . the woman in white gown, floating,

12  money put into the pocket, the Diamond"  because they "all appear in the movie."

13  (FAC, ¶ 5.)  Additionally, Princess Kennedy alleges that the passionate night

14  between Jack and Rose that took place in a car in the cargo hold of the Titanic is

15  substantially similar to "the cab scene where I am in the car . . . we are in the cab,

16  [the Preacher] is heavy and he wants his hands on a 1-year old baby me."  (FAC, ¶

17  11.)  None of these are protectable elements as explained in the authorities cited

18  above.

19        Exhibit C to the First Amended Complaint—which purports to demonstrate

20  similarities between Plaintiff's Biographies and *Titanic*—also reveals that Princess

21  Kennedy has, at most, alleged infringement of unprotectable elements.  Princess

22  Kennedy's allegations in Exhibit C include the following:

23        • Plaintiff's Biographies recount a story of "youngsters . . . [who] find

24          their fortune," which is allegedly similar to the search for a treasure—

25          the "Heart of the Ocean"—in *Titanic* (FAC Exh. C [24-4] at 1.)

26        • Scenes in *Titanic* in which Jack puts on a coat and "slicks his hair back

27          with spit" are allegedly similar to an instance where Gilbert "combed

28          through his hair with both hands."  (FAC Exh. C [24-5] at 18.)

CALDWELL
LESLIE &
PROCTOR
-15-                                    12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

- The scene in the *Titanic* where Jack tells Rose that "she's no picnic" while a "little blonde girl [is] having tea" and "Jack is at the railing" is allegedly similar to a scene in Plaintiff's Biographies where people "come back from their picnic and [Princess Kennedy] was in the baby bed crying and screaming as the teapot for tea was whistling as I tried to escape climbing over the rail."  (FAC Exh. C [24-5] at 19.)

- In one scene of the *Titanic*, Princess Kennedy alleges that "[w]e see rows of stacked cargo," which is allegedly similar to a scene in Plaintiff's Biographies where "[w]e see rows of stacked crates, with rotting wastes in containers."  (FAC Exh. C [24-5] at 25.)

- The scene in *Titanic* in which Jack is handcuffed for stealing the Heart of the Ocean is allegedly similar to the scene in which Gilbert is arrested for the alleged neglect of his five minor children.  (FAC Exh. C [24-5] at 41.)

- Caledon's suicide as a result of the 1929 stock-market crash in *Titanic* is allegedly similar to a crash caused by an airplane that happens during a story in Plaintiff's Biographies.  (FAC Exh. C [24-5] at 49.)

- The scene in *Titanic* where Rose "pulls necklace out" near the end of the film is allegedly similar to a scene in Plaintiff's Biographies where "My nose was burning because I had a tube through my nose running down to my stomach . . . I tried to pull the tube out of my nose, but, the doctor stopped me." (FAC Exh. C [24-5] at 58.)

These allegations are not actionable because they fail to state a claim for infringement of protectable elements.  As demonstrated above, Princess Kennedy's allegations *at most* state that there are common words, characters, and conceptual links between Plaintiff's Biographies and *Titanic*.  The purported similarities of the works—such as generic plot-lines (e.g., search for a treasure), common scenes (cargo boxes), and similar words used (e.g., "crash," albeit in two different

CALDWELL
LESLIE &
PROCTOR
-16-
12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  contexts)—are at best *scènes á faire* that copyright law does not protect.  However,

2  in order to state a claim for copyright infringement, Plaintiffs must allege copying of

3  protectable expression.  This Plaintiffs have failed to do.[2]

4       **C.     The First Amended Complaint Fails to State a Claim Under**

5              **Metcalf v. Bochco**

6       Nor do Plaintiffs' allegations in paragraph 5 of the First Amended Complaint

7  support a claim that Paramount has infringed Plaintiff's Biographies under *Metcalf*

8  *v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002).  There, the court found that the

9  copying of a "*significant* number of unprotectable elements" could be actionable.

10  *Id.*  In *Metcalf*, however, the copyrighted and infringing works shared *many* similar

11  generic elements.  For example, they both contained settings in overburdened

12  county hospitals in inner-city Los Angeles with black staffs, themes of poverty, race

13  relations, and urban blight; and characters who had similar physical descriptions and

14  events in their lives.  294 F.3d at 1074-75.  To state a claim under this theory,

15  Plaintiffs must allege a series of "striking" similarities between the works such that

16  a jury "could easily infer that the many similarities between plaintiffs' scripts and

17  defendants' work were the result of copying, not mere coincidence."  *Id.* at 1075.

18  Later courts have required that the similarities be seen in a "string" and voluminous.

19  *Zella*, 529 F.Supp.2d at 1138.

20

21

---

22  [2] Exhibit C of the First Amended Complaint appears to include additional

23  explanations of purported similarities, which are then apparently followed by pages
    of scripts with handwritten notes.  In many cases, the supporting scripts refer to

24  *Forrest Gump*, the subject of a lawsuit which Princess Kennedy lost on summary
    judgment.  *See, e.g.*, FAC Exh. C [24-4] at 29 & 53 (writing that her text is similar

25  to "Forrest [running] with 20 followers behind").  In other instances, Princess
    Kennedy's notes on scripts further reinforce that her allegations involve, at best,

26  unprotectable *scènes á faire*.  *See, e.g.*, FAC Exh. C [24-4] at 77 (commenting that
    the Works' scene of Therese painting a picture of a girl with a father is similar to the

27  scene of Jack drawing a nude Rose); FAC Exh. C [24-4] at 17 (commenting that text
    relating to arms transfer to China was similar to "SHIP . . . with people on it").

28

CALDWELL
LESLIE &
PROCTOR

-17-                                    12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   Plaintiffs fail to state a claim under this theory of infringement.  As described

2   above, it is difficult to find *any* similarity between Plaintiff's Biographies and

3   *Titanic*.  And to the extent there are any, Plaintiffs have at most identified random,

4   scattered similar ideas that do not amount to the same "string" of similarities present

5   in *Metcalf*.  *See, e.g.*, *Flynn v. Surnow,* 70 U.S.P.Q.2d 1231, 1238 (C.D.Cal. 2003)

6   (rejecting a *Metcalf* theory because the alleged similarities are "randomly scattered

7   throughout the works and have no concrete pattern or sequence in common.").

8   Accordingly, Plaintiffs cannot claim that the generic elements of Plaintiff's

9   Biographies have been infringed by Paramount in connection with *Titanic*.

10   **D.   *The First Amended Complaint Fails to Sufficiently Allege Access***

11   Plaintiffs have also failed to allege the essential element of access—that

12   somehow the creator of *Titanic* had access to Plaintiff's Biographies.  Ultimately,

13   Plaintiff will be required to prove—and therefore, at this time, is required to plead

14   facts supporting such a claim—that there is some nexus between the individual who

15   had access to Plaintiff's work and the creator of the allegedly infringing work.  *See*

16   *id.*  The "bare possibility" that the creator of *Titanic* may have had access to

17   Plaintiff's work is insufficient to sustain Plaintiff's copyright claim.  *See Jason v.*

18   *Fonda*, 698 F.2d 966, 967 (9th Cir. 1982).

19   Here, Plaintiffs allege in the First Amended Complaint that Paramount

20   "acquired her copyrighted material in the discovery process when Defendant told

21   her to turn over her copyrighted work, in a previous lawsuit, then they copied and

22   bounded Plaintiff's copyrighted work."  (FAC, ¶ 13.)  In other words, Princess

23   Kennedy alleges that her production of Plaintiff's Biographies to counsel

24   representing defendants Paramount, Viacom, and Blockbuster in the litigation

25   involving *Forrest Gump* somehow made its way to the writer and director of

26   *Titanic,* James Cameron.  *See* RJN Exh. 8.  This "bare possibility" (or sheer

27   speculation) of access is insufficient to state a claim for copyright infringement.  *See*

28   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (to survive a motion to

CALDWELL
LESLIE &
PROCTOR

-18-                                        12-CV-0372-WQH WMc

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief

2   above the speculative level").

3       **E.**    *Adam Urich Fails to State a Claim for Copyright Infringement*

4                   *Because He Lacks Standing*

5         In order to state a claim for copyright infringement, Plaintiff must be the

6   owner of the copyright or the legal or beneficial owner of an exclusive right of a

7   copyright.  17 U.S.C. § 501.  Plaintiff Adam Urich has failed to state any facts

8   supporting a claim that he is the owner of any of the copyrights (or a legal or

9   beneficial owner of an exclusive right thereof) at issue in the First Amended

10  Complaint.  To the contrary, Plaintiffs allege that Plaintiff's Biographies are owned

11  by Teresa K. Urich and/or Terry Urich (Princess Kennedy).  (FAC, ¶¶ 6-7 &

12  Exh. A.)  They further allege that Princess Kennedy is the "sole proprietor of the

13  Subject Work[s] included in this action."  (FAC, ¶ 14.)  Plaintiff Urich is identified

14  only as the "heir" of Princess Kennedy.  (FAC, ¶ 10.)  Accordingly, Plaintiff Adam

15  Urich lacks standing to state a claim for copyright infringement.

16  **V.**    **AMENDMENT WOULD BE FUTILE**

17        Princess Kennedy brought suit against Paramount twelve years ago alleging

18  that the film *Forrest Gump* infringed Plaintiff's Biographies.  This Court granted

19  summary judgment against Princess Kennedy, and as the record reflects, educated

20  Princess Kennedy that generic, unprotectable elements are not actionable and

21  admonished Princess Kennedy about further copyright lawsuits.

22        Notwithstanding that admonition, Princess Kennedy has initiated *another*

23  action based on the *same* copyrights and the *same* theories that Paramount has

24  infringed generic scenes, ideas, and loosely connected concepts.  Princess Kennedy

25  has amended her claims once in this action, but the First Amended Complaint stills

26  fails to state a viable cause of action because *Titanic* is not "substantially similar" to

27  Plaintiff's Biographies as a matter of law, Plaintiffs have not alleged infringement of

28  protectable elements, and Plaintiffs have failed to allege that the creator of *Titanic*

CALDWELL
LESLIE &
PROCTOR

-19-                12-CV-0372-WQH WMc

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

had access to Plaintiff's Biographies.  Accordingly, the First Amended Complaint should be dismissed.

Where, as here, Plaintiff has not—and cannot—allege facts to substantiate a claim, amendment would be futile and the Court should dismiss Plaintiff's Complaint with prejudice.  *See Moore v. United States,* 193 F.R.D. 647, 651 (N.D. Cal. 2000) ("a court may dismiss a pro se litigant's complaint without leave to amend if it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief and this defect cannot be cured by amendment").

## VI.  CONCLUSION

For the foregoing reasons, Paramount respectfully requests that the First Amended Complaint be dismissed with prejudice.

DATED: November 13, 2012        Respectfully submitted,

CALDWELL LESLIE & PROCTOR, PC
JOAN MACK


By _____/s/_____
            JOAN MACK
Attorneys for PARAMOUNT PICTURES
CORPORATION

CALDWELL
LESLIE &
PROCTOR

-20-                                                12-CV-0372-WQH WMc
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 725 South Figueroa Street, 31st Floor, Los Angeles, California 90017-5524.

On November 13, 2012, I served true copies of the following document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PARAMOUNT PICTURES CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** on the interested parties in this action as follows:

Princess Samantha Kennedy
Adam Clayton Urich
777 Seacoast Drive, No. N
Imperial Beach, CA 91932

**BY OVERNIGHT DELIVERY:**  I enclosed said document(s) in an envelope or package provided by the overnight service carrier and addressed to the persons at the addresses listed in the Service List.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight service carrier or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 13, 2012, at Los Angeles, California.

_____/s/_____
Mirela Popescu

CALDWELL
LESLIE &
PROCTOR