1
2
3
4
5
6
7
8           **UNITED STATES DISTRICT COURT**

9           **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  PRINCESS SAMANTHA KENNEDY; ADAM CLAYTON URICH, | Civil No.      12cv372-WQH-WMc |
| 12 | |
| 13                    Plaintiffs, | **ORDER** |
| 14            vs. | |
| 15  PARAMOUNT PICTURES CORPORATION, | |
| 16                    Defendant. | |

17  HAYES, Judge:

18          The matters before the Court are the Motion to Dismiss First Amended Complaint (ECF

19  No. 26), the Motion for Leave to Amend the First Amended Complaint (ECF No. 33), and the

20  Motion for Leave to File a Sur-Reply (ECF No. 40).

21  **I.      Background**

22          On February 10, 2012,  Plaintiffs Princess Samantha Kennedy and Adam Clayton Urich,

23  proceeding pro se, initiated this action by filing the Complaint against Defendant Paramount

24  Pictures Corporation.  (ECF No. 1).  On July 12, 2012, Defendant filed a Motion to Dismiss the

25  Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 14).  On July 26,

26  2012, Plaintiffs filed a Motion for Leave to Amend the Complaint and an opposition to the

27  Motion to Dismiss.  (ECF Nos. 16, 17).  On September 5, 2012, the Court issued an Order

28  granting Plaintiffs' Motion for Leave to Amend the Complaint and denying without prejudice

1  Defendant's Motion to Dismiss the Complaint.  (ECF No. 22).

2        On October 26, 2012, Plaintiffs filed the First Amended Complaint, which alleges a single

3  cause of action for copyright infringement pursuant to 17 U.S.C. § 101, et seq.  (ECF No. 24).

4  The First Amended Complaint alleges that the 1997 motion picture *Titanic* was copied from the

5  unpublished biographical works of Plaintiff Princess Samantha Kennedy.  The First Amended

6  Complaint alleges that, prior to April 1993, Plaintiff Kennedy "created three work-in-progress

7  scripts for an original motion picture entitled, 'My Daddy Was a Whistleblower' ... and 'Missing

8  Pieces.'"  *Id.* ¶ 6.  The First Amended Complaint alleges that "Defendant acquired [Plaintiff

9  Kennedy's] copyrighted material in the discovery process ... in a previous lawsuit [between

10  Plaintiff Kennedy and Defendant]."  *Id.* ¶ 13.  The First Amended Complaint alleges that

11  Plaintiff Urich is Plaintiff Kennedy's son and "heir," and that he is "entitled to money from the

12  money made from [Plaintiff Kennedy's] infringed work."  *Id.* ¶ 10.  Attached to the First

13  Amended Complaint is a 143-page exhibit which purports to show "[s]ample scene comparisons

14  between [Plaintiff Kennedy's] work and biographies, unpublished, and Defendant's copying in

15  *Titanic*."  *Id.* ¶ 11; *id.*, Ex. C.  The First Amended Complaint requests damages "in an amount

16  exceeding $3 billion dollars."  (ECF No. 24 at 15).

17        On November 13, 2012, Defendant filed the Motion to Dismiss First Amended Complaint

18  and a Request for Judicial Notice.  (ECF Nos. 26, 27).  Defendant contends that the First

19  Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

20  Defendant contends:

21      The most fundamental flaw in Plaintiffs' claim is that *Titanic* is not 'substantially
    similar,' as a matter of law, to Plaintiff's Biographies. [Defendant] requests that

22      the Court take judicial notice of Plaintiff's Biographies and a copy of *Titanic*, both
    of which are referred to in the First Amended Complaint and therefore may be

23      considered in connection with this Motion....

24      [T]he First Amended Complaint includes, at best, allegations of infringement of
    generic *scenes a faire*, which copyright law does not protect.  Further, Plaintiffs

25      fail to properly allege that the writer of *Titanic* had access to the copyrighted
    works at issue.

26
    The First Amended Complaint also admits that one of the Plaintiffs—Adam

27      Urich—does not own the copyrights at issue or any of the exclusive rights
    thereto....

28
    Finally, these defects cannot be cured by further amendment.

*Id*. at 7.

On November 30, 2012, Plaintiffs filed an opposition to the Motion to Dismiss and the Request for Judicial Notice. (ECF Nos. 29, 31). Plaintiffs contend that "*Titanic* is substantially similar [to Plaintiff Kennedy's works] and in the following pages [Plaintiffs] present a synopsis [of the similarities] between the works." (ECF No. 29 at 6-7). Plaintiffs contend that Plaintiff Urich is Plaintiff Kennedy's son, and "children are entitled to the benefits from their parents' copyrights." *Id*. at 7. Plaintiff Kennedy contends that she "worked for [Defendant], [and] they had access and cop[ied] from my work." *Id*. at 23.

On November 30, 2012, Plaintiffs filed the Motion for Leave to Amend the First Amended Complaint. (ECF No. 33). Plaintiffs contend that leave to amend should be granted to enable Plaintiffs to "submit a brief description, or synopsis comparing the works of [Plaintiff] Kennedy and [Defendant], in paragraph form"; "to show [Defendant had] access"; and to "let [Plaintiff Urich] state a claim in his words." *Id*. at 5-7.

On December 7, 2012, Defendant filed replies in support of the Motion to Dismiss and the Request for Judicial Notice. (ECF Nos. 34, 35).

On December 17, 2012, Defendant filed an opposition to the Motion for Leave to Amend the First Amended Complaint. (ECF No. 38).

On December 18, 2012, Plaintiffs filed the Motion for Leave to File a Sur-Reply. (ECF No. 40). Plaintiffs contend that they should be granted leave to file a sur-reply to respond to new arguments, "factual references" and "incorrect statements" in Defendant's reply briefs. *Id*. at 14.

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pac. Police Depot*, 901 F.2d 696, 699 (9th Cir. 1990). Courts may "consider

1  ... matters of judicial notice without converting the motion to dismiss into a motion for summary

2  judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

3  **III.    Request for Judicial Notice**

4        "A district court ruling on a motion to dismiss may consider documents whose contents

5  are alleged in a complaint and whose authenticity no party questions, but which are not

6  physically attached to the plaintiff's pleading." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th

7  Cir. 1998) (quotation omitted).

8        Defendant requests that the Court take judicial notice of a DVD copy of *Titanic*, and

9  "copies of Plaintiff Princess Samantha Kennedy's copyrighted works that are referenced in the

10  First Amended Complaint in this action, which were produced by Plaintiff Princess Samantha

11  Kennedy in the *Forrest Gump* Action, were filed in support of Defendants' Motion for Summary

12  Judgment in the *Forrest Gump* Action, and were downloaded from the Court's PACER

13  website."[1]  (ECF No. 27 at 2-3, 27-4, 27-5, 27-6, 27-8).  Defendants also request that the Court

14  take judicial notice of other filings in the *Forrest Gump* action.

15        Plaintiffs oppose the Request for Judicial Notice.  Plaintiffs state that they do "not at all

16  ma[k]e a statement one way or another to Defendant's 'authenticity' of the exhibits."  (ECF No.

17  40 at 11).  Plaintiffs contend that Defendant failed to include a complete copy of a newspaper

18  article dated March 29, 1981, which was attached to one of Plaintiff Kennedy's copyrighted

19  biographical works.  Plaintiffs state that "this whole news article" is attached to Plaintiffs'

20  objection to the Request for Judicial Notice.  (ECF No. 31 at 10; *see id*., Ex. A).  Plaintiffs state

21  that they have not viewed the DVD of *Titanic*, although they state that they have viewed *Titanic*

22  "recently on cable" and in a movie theater on April 16, 2012.  (ECF No. 24 at 6; ECF No. 31 at

23  9).

24        The Court takes judicial notice of the DVD of *Titanic* (ECF No. 27-8) and Plaintiff

25  Kennedy's copyrighted works (including the full newspaper article attached to Plaintiffs'

26  _____

27        [1]  In 1995, Plaintiff Kennedy sued Defendant in this Court alleging that Plaintiff
   Kennedy's three copyrighted works at issue in this case were infringed upon by the motion

28  picture, *Forrest Gump*.  *See Kennedy v. Paramount Pictures Corp.*, S.D. Cal. Case No. 95-cv-
   1954-K.  The Court granted summary judgment in favor of Defendant, and the judgment was
   affirmed on appeal.  *See id.*, ECF Nos. 42, 77.

objection to the Request for Judicial Notice) that are referenced in the First Amended Complaint in this action (ECF Nos. 27-4, 27-5, 27-6, 31). *See Ritchie*, 342 F.3d at 908 ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."). The Court declines to take judicial notice of the other filings from the *Forrest Gump* action, finding that they are not relevant to the issues to be decided in the pending motions in this action.

**IV.    Discussion**

 "[W]hen the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. West Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *see also Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1111-12 (N.D. Cal. 2010) (same); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007) ("For fifty years, courts have followed this rather obvious principle and dismissed copyright claims that fail from the face of the complaint (and in light of all matters properly considered on a motion to dismiss).") (collecting cases).

To state a claim for copyright infringement, Plaintiffs must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The second element requires Plaintiffs to allege that "the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). Even if ownership and access are demonstrated,[2] a court must still decide whether the two works are "substantially similar." *Funky Films, Inc. v. Time*

---

    [2]   The Court assumes without deciding that Plaintiffs have adequately alleged that Plaintiff Kennedy owns a valid copyright as to her three works at issue, and Defendant had access to Plaintiff Kennedy's copyrighted work. The Court finds that the First Amended Complaint fails to adequately allege that Plaintiff Urich presently owns a valid copyright.

1   *Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006).

2          "The substantial-similarity test contains an extrinsic and intrinsic component."  *Id*. at

3   1077.  To assess substantial similarity as a matter of law, the Court must apply the objective

4   "extrinsic test."  *Id*. ("[T]he intrinsic test, which examines an ordinary person's subjective

5   impressions of the similarities between two works, is exclusively the province of the jury.  A

6   plaintiff who cannot satisfy the extrinsic test necessarily loses [as a matter of law], because a

7   jury may not find substantial similarity without evidence on both the extrinsic and intrinsic

8   tests.") (quotation omitted).  "The extrinsic test focuses on articulable similarities between the

9   plot, themes, dialogue, mood, setting, pace, characters, and sequence of events of the two

10  works."  *Id*. (quotation omitted).  "In applying the extrinsic test, [the] court compares, not the

11  basic plot ideas for stories, but the actual concrete elements that make up the total sequence of

12  events and the relationships between the major characters."  *Id*. (quotation omitted).

13         The Court has reviewed both Plaintiff Kennedy's copyrighted works and *Titanic*.  The

14  Court finds that the plots and sequence of events in Plaintiff Kennedy's works and *Titanic* turn

15  on significantly different storylines and events.  Plaintiff Kennedy's works recount the story of

16  an individual, Gilbert Glenn, who is forced out of the United States Air Force during the 1950's

17  for being a whistleblower.  This event ruins his life and that of his family.  Gilbert Glenn suffers

18  through illness, false charges of misconduct, a McCarthy-era investigation by the Federal Bureau

19  of Investigation, and paralysis.  The children of Gilbert Glenn and his wife Lorine Kennedy are

20  sent to foster homes as a result of false charges of neglect and abuse instigated by Lorine

21  Kennedy's mother.  After much effort, Gilbert Glenn eventually reunites with four of his five

22  children, including Theresa Ulrich, aka Theresa Kennedy, aka Princess Samantha Kennedy, who

23  had been raised in a foster home and suffered a serious illness.  *Titanic* is a love story that takes

24  place aboard the British passenger ship Titanic in 1912.  The shipboard romance centers on a

25  young socialite with a wealthy fiance, and a young working class man traveling in third-class.

26  The motion picture also depicts the true story of the sinking of the Titanic.

27         The settings are also significantly different.  Plaintiff Kennedy's works take place in a

28  multitude of settings and locations across North America, from Tennessee to Wisconsin to

Newfoundland to Ohio and back to Tennessee. Plaintiff Kennedy's works depict Gilbert Glenn's story over a thirty-year period against a backdrop of historical events of the latter-half of the twentieth century, including the Korean war, the McCarthy Era, and the presidency of Richard Nixon. By contrast, *Titanic* takes place primarily aboard an English passenger ship as it sails at sea and eventually sinks. *Titanic* largely depicts events occurring during a few days in 1912, with a few additional scenes set in the present day.

The moods are different. Plaintiff Kennedy's works depict a mood of despair, injustice, and familial love and perseverance. By contrast, *Titanic* depicts a mood of young love, romance, adventure and tragedy.

The characters are significantly different. For example, the primary characters of Plaintiff Kennedy's works are Gilbert Glenn and Lorine Kennedy. Gilbert Glenn is an accomplished and ethical officer of the U.S. Air Force, who suffers through injustice and illness. Lorine Kennedy is his devoted wife and mother of his children. The primary characters of *Titanic* are Jack Dawson and Rose DeWitt Bukater. Jack Dawson is a free-roaming drifter of limited means and Rose DeWitt Bukater is a young socialite from a wealthy background who yearns to escape the confines of her social status.

Plaintiffs contend that the dialogue is similar because "[i]n both *Titanic* and [Plaintiff Kennedy's] work, my father [i.e., Gilbert Glenn] and Cal [i.e., the fiance of Rose DeWitt Bukater] both are searching for the missing girl ..., both state 'find her' 'I'll find you.' In *Titanic*, the card game is being played, [Jack Dawson] wins, 'it was like winning the lottery'; mine, the card game is being played, [Gilbert Glenn] wins, 'You [would] think he won the lottery.'" (ECF No. 40 at 9). The Court finds that Plaintiff Kennedy's works and *Titanic* do not have "the type of extended similarity of dialogue needed to support a claim of substantial similarity based upon this issue." *Olson v. Nat'l Broad. Co., Inc.*, 855 F.2d 1446, 1450 (9th Cir. 1988); *see also Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989) ("Ordinary phrases are not entitled to copyright protection. Phrases and expressions conveying an idea typically expressed in a limited number of stereotyped fashions are not subject to copyright protection.").

The Court has reviewed the exhibit to the First Amended Complaint which purports to

1   show "[s]ample scene comparisons between [Plaintiff Kennedy's] work and biographies,

2   unpublished, and Defendant's copying in *Titanic*."  (ECF No. 24 ¶ 11; *id.*, Ex. C).  For example,

3   Plaintiffs highlight that in *Titanic*, Jack Dawson "slicks his hair back with spit," while in

4   Plaintiff Kennedy's works, Gilbert Glenn "combed through his hair with both hands" and

5   another character "slicked back his greasy hair."  (ECF No. 24-5 at 18).  Plaintiffs cite the

6   following from passage from the script of *Titanic*—"After Jack tells Rose she's no picnic, we

7   see a little blonde girl having tea.  Rose calmly and deliberately turns her teacup over, spilling

8   tea all over her dress.  Jack is at the railing."—as similar to the following passage from Plaintiff

9   Kennedy's works—"After they come back from a picnic, I [i.e., Plaintiff Kennedy] was in the

10  baby bed crying and screaming as the teapot for tea was whistling as I tried to escape [by]

11  climbing over the rail.  Poison is poured into the hot drink.  I am screaming.  Lorine spills the

12  hot drink all over her, onto the floor."  *Id.* at 19.

13          After review of the First Amended Complaint, the attached exhibits, the filings of the

14  parties, and the materials subject to judicial notice, the Court finds that any similarities between

15  Plaintiff Kennedy's works and *Titanic* are, at most, "[o]rdinary phrases," "stock scenes

16  containing little in the way of original expression," and/or "*scenes a faire*, which flow naturally

17  from generic plot-lines." *Funky Films*, 462 F.3d at 1076 ("*[S]cenes a faire*, which flow naturally

18  from generic plot-lines, are not protectable.  [Courts] must take care to inquire only whether the

19  *protectable elements, standing alone*, are substantially similar.  In so doing, [courts] filter out

20  and   disregard   the   non-protectable   elements   in   making   [the]   substantial   similarity

21  determination.") (quotation omitted); *Narell*, 872 F.2d at 911 ("Ordinary phrases are not entitled

22  to copyright protection.   Similarly, stock scenes containing little in the way of original

23  expression are not protected.") (citations omitted); *see also Berkic v. Crichton*, 761 F.2d 1289,

24  1293 (9th Cir. 1985) ("Many of the other similarities [plaintiff] lists [between the two works at

25  issue]—including depictions of the small miseries of domestic life, romantic frolics at the beach,

26  and conflicts between ambitious young people on one hand, and conservative or evil

27  bureaucracies on the other—are also unprotectible.  These familiar scenes and themes are among

28  the very staples of modern American literature and film.  The common use of such stock cannot

raise a triable issue of fact on the plaintiff's copyright claim.  It merely reminds us that in Hollywood, as in the life of men generally, there is only rarely anything new under the sun.").

With respect to the elements that are subject to the extrinsic test, Plaintiff Kennedy's works and *Titanic* are more different than other works that courts have found to lack substantial similarity as a matter of law.  *See, e.g.*, *Funky Films, Inc.*, 462 F.3d at 1077-81 (no substantial similarity between two works about a small funeral home and the intimate lives of family members who operated it after the death of the family patriarch and the return of the "prodigal son"); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045-46 (9th Cir. 1994) (no substantial similarity between two family comedy/adventure films about people who are accidentally shrunk); *Berkic*, 761 F.2d at 1293 (no substantial similarity between two works about young professionals exposing a criminal organization that murders healthy people and sells the organs for transplants).

The Court finds that, as a matter of law, *Titanic* is not substantially similar to any protectable elements of Plaintiff Kennedy's works, and Defendant did not "cop[y] ... constituent elements of [Plaintiff Kennedy's] work that are original."  *Feist Publ'ns, Inc.*, 499 U.S. at 361.

**V.     Conclusion**

IT IS HEREBY ORDERED that the Motion to Dismiss First Amended Complaint is GRANTED.  (ECF No. 26).  The Motion for Leave to Amend the First Amended Complaint (ECF No. 33) and the Motion for Leave to File a Sur-Reply (ECF No. 40) are DENIED as moot.[3] The First Amended Complaint is dismissed with prejudice.  The Clerk of the Court shall close this case.

DATED:  March 27, 2013

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge

---

[3]  The Court has considered no arguments or materials submitted by Defendant in any reply filings.